No. DA 06-0372

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 55N

CHERYL CLIFFORD,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. CDV-2005-903
                      Honorable Thomas Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Cheryl Clifford, *pro se*, Butte, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
        Assistant Attorney General, Helena, Montana

        Robert L. Deschamps III, Special Prosecutor, Lewis and Clark
        County, Missoula, Montana

                 Submitted on Briefs:  January 31, 2007

                        Decided:  February 27, 2007

Filed:

                 _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      The facts surrounding Cheryl Clifford's felony convictions for fabricating physical evidence and threats and improper influence are described in detail in *State v. Clifford*, 2005 MT 219, 328 Mont. 300, 121 P.3d 489, and need not be repeated here.

¶3      After her convictions were affirmed by this Court on direct appeal, Clifford filed a petition for postconviction relief in the District Court claiming jury misconduct, ineffective assistance of counsel, violation of due process, that one of the State's investigators had a conflict of interest, and religious persecution. The next month, Clifford filed a petition for DNA testing.

¶4      The State responded that Clifford's postconviction claims were unsupported by facts or law, procedurally barred, and without merit. In its response to Clifford's request for DNA testing, the State relied upon the affidavit of Phil Kinsey, Ph.D., the DNA Technical Leader at Montana's Crime Lab, arguing that further testing would be a waste of time and would not be reasonably more probative of whether Clifford or someone else was the perpetrator. Additionally, the State argued that all evidence cited by Clifford was available for testing prior to trial.

2

¶5 Clifford now appeals the District Court's denial of her petitions. We affirm.

¶6 **I. Did the District Court err in denying Clifford's petition for DNA testing?**

¶7 Clifford cites to twenty-one pieces of DNA evidence, primarily envelopes, that she claims the State "failed to develop," and one brown hair that the State "failed to analyze." While not specifically explaining how testing the DNA would serve to exonerate her, Clifford does point out that the hair sample "revealed dissimilarities in numerous characteristics" from her hair, and thus there is doubt as to whether she committed the felonies for which she has been convicted and the DNA should be further analyzed to prove her innocence.

¶8 A petitioner seeking DNA testing must "explain, in light of all the evidence, how the requested testing would establish the petitioner's innocence of the felony . . . ." Section 46-21-110(1)(c), MCA. In response to her petition, the State submitted Dr. Kinsey's affidavit. Dr. Kinsey concluded that extra testing would reveal no usable data. First, the DNA present in the extracts, if any, is at such a low level that it is "below the detection limit. . . . " Second, the envelopes "were potentially handled by numerous individuals in receipt and delivery of those envelopes." Accordingly, even if the envelopes were subjected to more sensitive testing and the DNA of other people was found, it would not establish Clifford's innocence. Finally, Clifford had the opportunity, before trial, to seek more sensitive testing but did not do so. Clifford has therefore failed to meet the burden required for the court to order additional DNA testing.

¶9 **II. Were Clifford's due process rights violated by the prosecutor's opening and closing statements?**

¶10 Clifford contends that the prosecutor, in his opening statement, stated that no DNA evidence was found, and then admitted, in closing, that his argument was "still kind of fuzzy." These statements, according to Clifford, misled the jury and violated her due process rights. Although Clifford failed to object below to either statement, she argues we should analyze her claim under plain error review.

¶11 We utilize plain error review sparingly, reserving it for situations where failing to review may result in a "manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial," or "may compromise the integrity of the judicial process." *State v. English*, 2006 MT 177, ¶ 66, 333 Mont. 23, ¶ 66, 140 P.3d 454, ¶ 66 (citations omitted). Here, Clifford fails to demonstrate that failure to review her claim would result in a "manifest miscarriage of justice." As discussed in Issue I, there were no usable DNA samples collected, so it is questionable whether any error occurred at all, much less one plainly implicating Clifford's constitutional rights. We thus refuse to invoke plain error review.

¶12 **III. Did the District Court err in denying Clifford's ineffective assistance of counsel claim?**

¶13 Clifford claims that her counsel's work on appeal was so deficient that she should be granted a new appeal. As evidence of her counsel's ineffective assistance, she notes that this

4

Court refused, on appeal, to address many key issues because her counsel failed to raise the issue below, failed to cite authority, and failed to cite to sufficient evidence.

¶14     We evaluate IAC claims based on a two-part test.  A defendant must prove: (1) that the counsel's performance was deficient; and (2) that counsel's deficient performance was prejudicial." *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. To show prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result would have been different.  *Dawson*, ¶ 20.

¶15     Here, Clifford fails to explain what her appellate counsel should have done differently, and also fails to identify any specific issue that would have been resolved in her favor if this Court had addressed it.  Consequently, Clifford has not carried her burden of proving that her counsel's errors on appeal, if any, were prejudicial.

¶16     **IV. Were Clifford's due process rights violated when the District Court delayed entering its written judgment?**

¶17     Clifford claims that the District Court failed to enter written judgment within thirty days after its oral pronouncement of sentence, and thus violated § 46-18-116(1), MCA. Clifford further claims that the court's failure to enter written judgment deprived this Court of jurisdiction to hear her appeal, as the written judgment was not entered until October 5, 2005, after our opinion was issued but prior to remittitur.

¶18     Clifford's proposition that the lack of a written judgment deprives this Court of jurisdiction is unsupported by authority.  The oral pronouncement of a sentence, not the written judgment, is the legally effective sentence and valid final judgment.  *State v. Lane*,

5

1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40. Additionally, Clifford has failed to show prejudice as she was the party who filed the notice of appeal, submitted arguments for this Court's consideration, and received the benefit of a stay of execution of her sentence pending appeal.

¶19 **V. Did the actions of a State Agent bias the prosecution?**

¶20 Finally, Clifford cites to a poem apparently written by a State Agent working on her case that she claims shows he was biased against her. She argues, further, that the poem creates a "strong threshold of doubt" concerning her guilt and then, in her reply, argues that the Agent's bias affected the prosecution of her case.

¶21 Clifford fails to cite any legal authority or other evidence for her contention that the Agent's bias affected the prosecution. Also, the poem is just that, a poem, and, though certainly odd and perhaps poorly crafted, does not by itself raise reasonable doubt concerning the conduct of the prosecution in her case.

¶22 It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the findings of fact were not clearly erroneous and the court's conclusions of law are correct.

¶23 We affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

6

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS